UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC. and MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>WARNER CHILCOTT PUBLIC LIMITED COMPANY; WARNER CHILCOTT HOLDINGS COMPANY III, LTD.; WARNER CHILCOTT CORPORATION; WARNER CHILCOTT (US) INC.; WARNER CHILCOTT COMPANY, INC.; GALEN (CHEMICALS), LTD.; and BARR PHARMACEUTICALS, INC.,<br><br>        **Defendants.** | **05 Civ. 2195 (CKK)**<br><br><u>**JURY TRIAL DEMANDED**</u> |
| LOUISIANA WHOLESALE DRUG CO., INC., on behalf of itself and all others similarly situated,<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>WARNER CHILCOTT PUBLIC LIMITED COMPANY; WARNER CHILCOTT HOLDINGS COMPANY III, LTD.; WARNER CHILCOTT CORPORATION; WARNER CHILCOTT (US) INC.; WARNER CHILCOTT COMPANY, INC.; GALEN (CHEMICALS), LTD.; and BARR PHARMACEUTICALS, INC.,<br><br>        **Defendants.** | **05 Civ. 2210 (CKK)**<br><br><u>**JURY TRIAL DEMANDED**</u> |

ROCHESTER DRUG CO-OPERATIVE, INC., on
behalf of itself and all others similarly situated,

        Plaintiff,

            v.

WARNER CHILCOTT PUBLIC LIMITED
COMPANY; WARNER CHILCOTT HOLDINGS
COMPANY III, LTD.; WARNER CHILCOTT
CORPORATION; WARNER CHILCOTT (US)
INC.; WARNER CHILCOTT COMPANY, INC.;
GALEN (CHEMICALS), LTD.; and BARR
PHARMACEUTICALS, INC.,

        Defendants.

05 Civ. 2257 (CKK)

**JURY TRIAL DEMANDED**

---

VALLEY WHOLESALE DRUG COMPANY,
INC., individually and on behalf of all others
similarly situated,

        Plaintiff,

            v.

WARNER CHILCOTT PUBLIC LIMITED
COMPANY; WARNER CHILCOTT HOLDINGS
COMPANY III, LTD.; WARNER CHILCOTT
CORPORATION; WARNER CHILCOTT (US)
INC.; WARNER CHILCOTT COMPANY, INC.;
GALEN (CHEMICALS), LTD.; and BARR
PHARMACEUTICALS, INC.,

        Defendants.

05 Civ. 2321 (CKK)

**JURY TRIAL DEMANDED**

---

AMERICAN SALES COMPANY, INC., on behalf
of itself and all others similarly situated,

        Plaintiff,

            v.

05 Civ. 2335 (CKK)

**JURY TRIAL DEMANDED**

WARNER CHILCOTT PUBLIC LIMITED
COMPANY; WARNER CHILCOTT HOLDINGS
COMPANY III, LTD.; WARNER CHILCOTT
CORPORATION; WARNER CHILCOTT (US)
INC.; WARNER CHILCOTT COMPANY, INC.;
GALEN (CHEMICALS), LTD.; and BARR
PHARMACEUTICALS, INC.,

               **Defendants.**

SAJ DISTRIBUTORS, INC. and STEPHEN L.
LaFRANCE HOLDINGS, INC., individually and
on behalf of all others similarly situated,

               **Plaintiffs,**

          **v.**

WARNER CHILCOTT PUBLIC LIMITED
COMPANY; WARNER CHILCOTT HOLDINGS
COMPANY III, LTD.; WARNER CHILCOTT
CORPORATION; WARNER CHILCOTT (US)
INC.; WARNER CHILCOTT COMPANY, INC.;
GALEN (CHEMICALS), LTD.; and BARR
PHARMACEUTICALS, INC.,

               **Defendants.**

**05 Civ. 2459 (CKK)**

**<u>JURY TRIAL DEMANDED</u>**

## <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

      Plaintiffs American Sales Company, Inc., Louisiana Wholesale Drug Company,

Inc., Meijer, Inc., Meijer Distribution, Inc., Rochester Drug Co-operative, Inc., SAJ Distributors,

Inc., Stephen L. LaFrance Holdings, Inc., and Valley Wholesale Drug Company, Inc.

(collectively, "Plaintiffs"), by and through their undersigned attorneys, bring this action on

behalf of themselves and all others similarly situated, against Defendants Warner Chilcott

Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner

Chilcott Company, Inc., Warner Chilcott Public Limited Company, Galen (Chemicals) Ltd.

(collectively, "Warner Chilcott" or "Warner Chilcott Defendants"), and Barr Pharmaceuticals,

Inc. ("Barr"). Plaintiffs make the following allegations based upon personal knowledge as to

those matters relating to themselves and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.    This case involves a horizontal agreement between Warner Chilcott and Barr not

to compete in the sale of Ovcon 35 ("Ovcon"), an oral contraceptive and its AB-rated generic

equivalents.

2.    Warner Chilcott is a pharmaceutical company that develops, manufactures,

markets, and distributes proprietary women's healthcare and dermatological pharmaceutical

products. Pursuant to an agreement with Bristol-Myers Squibb Company, Warner Chilcott is the

exclusive marketer of Ovcon in the United States.

3.    Barr is a pharmaceutical company that develops, manufactures, markets, and

distributes generic and proprietary pharmaceutical drugs. Barr developed a generic version of

Ovcon, which was approved for sale by the United States Food and Drug Administration on or

about April 22, 2004.

4.    Barr planned to market its generic drug in competition with Warner Chilcott's

branded Ovcon. Prior to the challenged agreement, both Warner Chilcott and Barr predicted that

the entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's Ovcon

sales, capturing approximately 50% of Ovcon's business in the first year alone.

5.    As alleged more fully herein, Warner Chilcott entered into an agreement with

Barr, in which Barr agreed not to market its generic Ovcon for five years in exchange for Warner

Chilcott's payment of approximately $20 million.

6.    Defendants' agreement denied Plaintiffs and other purchasers of Ovcon the

benefits of competition and of less-expensive, generic versions of Ovcon. As a result, Plaintiffs

and members of the class defined below have paid supracompetitive prices for Ovcon.

**JURISDICTION AND VENUE**

7.      This action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§

15 and 26, to obtain injunctive relief and recover treble damages and the costs of suit, including

reasonable attorneys' fees, for injuries sustained by Plaintiffs and members of the Class as a

result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged

herein.

8.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §

15 and 28 U.S.C. §§ 1331 and 1337(a).

9.      Venue is proper in this District under 15 U.S.C. §§ 15, 22, and 26 and under 28

U.S.C. § 1391, because (1) Warner Chilcott and Barr transact business and are found within this

District; and (2) a substantial portion of the affected trade and commerce described below has

been carried out in this District.

**PARTIES**

10.     Plaintiff American Sales Company, Inc. ("American Sales") is a corporation

organized, existing, and doing business under and by virtue of the laws of the State of Delaware,

with its principal place of business located in Erie County, New York. American Sales

purchased Ovcon directly from one or more of the named Defendants during the Class Period, as

defined below.

11.     Plaintiff Louisiana Wholesale Drug Company, Inc. ("Louisiana Wholesale") is a

corporation organized, existing, and doing business under and by virtue of the laws of the State

of Louisiana, with its principal place of business located at 2085 I-49, South Service Road,

- 5 -

Sunset, Louisiana 70584. Louisiana Wholesale purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

12.    Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (collectively, "Meijer") are corporations organized under the laws of Michigan, with their principal places of business in Grand Rapids, Michigan. Meijer is the assignee of the claims of the Frank W. Kerr Co., which purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

13.    Plaintiff Rochester Drug Co-operative, Inc. ("Rochester Drug") is a pharmaceutical wholesale company, with its principal place of business located at 50 Jet View Drive, Rochester, New York 14624. Rochester Drug purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

14.    Plaintiff Stephen L. LaFrance Holdings, Inc. ("LaFrance") is a holding company, with its corporate office located in Pine Bluff, Arkansas. Plaintiff SAJ Distributors, Inc. ("SAJ") is a wholly-owned subsidiary of LaFrance, with its office located in Pine Bluff, Arkansas. LaFrance and SAJ have interests in retail and wholesale drug distribution, and they are the assignees of McKesson Corporation, which purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

15.    Plaintiff Valley Wholesale Drug Company, Inc. ("Valley Wholesale") is a corporation organized, existing, and doing business under and by virtue of the laws of the State of California, with its principal place of business located at 1401 West Fremont Street, Stockton, California 95203-2627. Valley Wholesale purchased Ovcon directly from one or more of the named Defendants during the Class Period, as defined below.

16.    Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-

profit company organized, existing, and doing business under and by virtue of the laws of

Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM

12 Bermuda. Its principal place of business is located at 100 Enterprise Drive, Rockaway, New

Jersey 07866-2129.

17.    Defendant Warner Chilcott Corporation is a wholly-owned subsidiary of Warner

Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott

(U.S.) Inc. Warner Chilcott Corporation is a for-profit company organized, existing, and doing

business under and by virtue of the laws of the State of Delaware, with its principal place of

business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

18.    Defendant Warner Chilcott (U.S.) Inc. is a wholly-owned subsidiary of Warner

Chilcott Corporation. Warner Chilcott (U.S.) Inc. is a for-profit company organized, existing,

and doing business under and by virtue of the laws of the State of Delaware, with its principal

place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

19.    Defendant Warner Chilcott Company, Inc. is a wholly-owned subsidiary of

Warner Chilcott Holdings Company III, Ltd., and is organized, existing, and doing business

under and by virtue of the laws of the Commonwealth of Puerto Rico.

20.    Defendant Warner Chilcott Public Limited Company (formerly Galen Holdings

PLC) is a privately-owned, for-profit company organized, existing, and doing business under and

by virtue of the laws of Northern Ireland, with its principal place of business located at Old

Belfast Road, Milbrook, Larne, BT40 2SH, County Antrim, United Kingdom.

21.    Defendant Galen (Chemicals) Limited is a for-profit enterprise organized,

existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen is

directly and/or indirectly owned and/or controlled by Warner Chilcott Holdings Company III,

Ltd.

22.     Unless otherwise specified Defendants Warner Chilcott Holdings Company III,

Ltd., Warner Chilcott Corporation, Warner Chilcott (U.S.) Inc., Warner Chilcott Company, Inc.,

Warner Chilcott Public Limited Company, and Galen (Chemicals) Ltd. are referred to herein

collectively as "Warner Chilcott" or the "Warner Chilcott Defendants." Warner Chilcott is

engaged in the business of developing, manufacturing, marketing, and distributing women's

healthcare and dermatological pharmaceutical products, including Ovcon.

23.     Defendant Barr Pharmaceuticals, Inc., is a corporation organized, existing, and

doing business under and by virtue of the laws of the State of Delaware, with its principal place

of business located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.  Barr is

engaged in the business of developing, manufacturing, marketing, and distributing generic oral

contraceptive products.

## BACKGROUND

### The Regulatory System Governing Pharmaceuticals in the United States

24.     The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, as amended

by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman

Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003,

codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to

facilitate competition from lower-priced generic drugs.

25.     Before a manufacturer can market a new drug in the United States, it must obtain

approval from the United States Food and Drug Administration ("FDA").

26.     The FDA maintains a list of approved "Reference Listed Drugs" in a publication

entitled, "Approved Drug Products with Therapeutic Equivalence Evaluations," which is

commonly known as the "Orange Book."

27.    A manufacturer seeking to market a new drug must file with the FDA a New Drug Application (NDA), demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005). Once the FDA approves the NDA, the manufacturer may market the branded drug, and the branded drug may be listed in the Orange Book. The NDA process is typically time-consuming and expensive.

28.    In 1984, Congress enacted the Hatch-Waxman Act, which accelerated the approval process for generic drugs. Among other things, the Act permits a manufacturer seeking FDA approval for a generic drug to file an Abbreviated New Drug Application ("ANDA"). 21 U.S.C. § 355(j) (2005). An ANDA filer may rely on the safety and efficacy data previously provided in the NDA for its branded counterpart. FDA approval of an ANDA takes, on average, about 18 months.

29.    FDA-approved generic drugs are certified by the FDA as bioequivalent to the branded drug whose NDA the generic drug relied upon in its ANDA and are completely interchangeable with that branded drug. The FDA refers to such drugs as "AB-rated." A generic drug that is "AB-rated" may be listed in the Orange Book and dispensed by a pharmacist in lieu of its branded counterpart.

### The Consumer Benefits of Generic Drugs

30.    Upon their introduction, generic drugs are generally priced 30 to 50 percent (or more) below the price of their brand-name equivalents. Because generic and branded drugs are fully interchangeable in terms of safety and efficacy, purchasers may choose to purchase the less expensive generic instead of the brand-name drug.

31.    Almost all states (and the District of Columbia) encourage generic competition

through laws that allow pharmacists to substitute brand-name drugs with their "AB-rated" generic equivalents, unless a physician directs or the patient requests otherwise.

32.    Many third-party payors of prescription drugs (*e.g.*, health insurance plans, Medicaid programs) have adopted policies to encourage the substitution of available AB-rated generic drugs for their branded counterparts.

33.    Purchasers benefit from the introduction of generic drugs in the form of lower prices. A 1998 Congressional Budget Office Report estimates that in 1994 alone, consumers saved $8–$10 billion on prescriptions at retail pharmacies by purchasing generic drugs in place of the brand-name equivalents.

## Ovcon

34.    Ovcon is an oral contraceptive, containing norethindrone and ethinyl estradiol as its active ingredients. It has been available to the general public as a prescription pharmaceutical product since approximately 1976 and is not subject to patent protection.

35.    Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS") manufactured, distributed, and marketed Ovcon in the United States.

36.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title, and interests in Ovcon products, including an agreement with Bristol Myers Squibb Laboratories Company ("BMSLC"), a wholly-owned subsidiary of BMS, to supply Ovcon products to Warner Chilcott.

37.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC and continues to be the exclusive marketer of Ovcon in the United States at the present time.

38.    Ovcon is highly profitable. It is, and has been, one of Warner Chilcott's highest revenue-producing products. Ovcon's net dollar sales have more than doubled since 2000, even

as Warner Chilcott has raised Ovcon's price. For the twelve months ending September 30, 2004,
Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

### Generic Ovcon

39.     In September 2001, Barr filed an ANDA with the FDA for approval to market an
AB-rated generic version of Ovcon.

40.     In January 2003, Barr publicly announced its intention to launch a generic version
of Ovcon by the end of that year.

41.     Barr intended to sell its generic version of Ovcon at a price approximately 30%
below the price Warner Chilcott charged for Ovcon.

42.     Warner Chilcott expected Barr to price its generic Ovcon at approximately 30%
below the price Warner Chilcott charged for Ovcon.

43.     Barr projected that within its first year of introduction, generic Ovcon would
capture approximately 50% of Warner Chilcott's branded Ovcon sales.

44.     Warner Chilcott projected that within its first year of introduction, generic Ovcon
would capture at least 50% of Ovcon's new prescriptions. Warner Chilcott calculated that, as a
result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline
by at least $100 million over a three-year period.

45.     To forestall this competitive threat and to protect its Ovcon revenues, Warner
Chilcott embarked on a strategy to convert Ovcon customers to a chewable form of the product
(Ovcon Chewable) and to stop selling branded Ovcon before entry of the generic equivalent.
Prescriptions for Ovcon Chewable would not be able to be filled with Barr's generic Ovcon
because Barr's generic version of non-chewable Ovcon would not be AB-rated to Ovcon
Chewable.

46.    The switch to a chewable form of Ovcon will bring no real benefits to patients and was sought by Warner Chilcott to preserve its monopoly profits on Ovcon.

47.    By mid-2003, however, Warner Chilcott's strategy of converting users from non-chewable Ovcon to Ovcon Chewable was in jeopardy. The entry of Barr's generic Ovcon appeared imminent, and the FDA had not yet approved Ovcon Chewable for sale.

48.    In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

## Defendants' Agreement Not to Compete

49.    By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

50.    In August 2003, Warner Chilcott and Barr discussed potential business arrangements under which Barr would refrain from competing with Warner Chilcott's branded Ovcon.

51.    On September 10, 2003, Warner Chilcott and Barr signed a Letter of Intent to enter into an agreement in which Warner Chilcott would pay Barr $20 million not to compete in the United States for a term of five years with its generic Ovcon product following Barr's final FDA approval for generic Ovcon. Rather than enter the market as a competitor, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

52.    On March 24, 2004, Defendants signed their Agreement, as contemplated by their Letter of Intent, and Warner Chilcott paid Barr $1 million.

53.    Under the Agreement, within 45 days after FDA approval of Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's

commitment to refrain from marketing generic Ovcon in the United States, either by itself, or through a license, for five years.

54.    On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic Ovcon.

55.    On April 23, 2004, Barr announced its intent to begin marketing generic Ovcon under the name "Balziva" in the event Warner Chilcott chose not to exercise its option under the Agreement.

56.    On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Warner Chilcott paid Barr $19 million in exchange for Barr's agreement not to compete with Warner Chilcott by introducing generic Ovcon into the market.

57.    Under the terms of the Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.

58.    Absent this Agreement, Barr would have begun marketing its generic Ovcon after it received FDA approval of its ANDA on or about April 22, 2004.

59.    Barr has abided by the Agreement not to sell generic Ovcon in the United States. To date, no other company has received FDA approval to market a generic version of Ovcon.

60.    If Barr had introduced its generic product, Plaintiffs and members of the Class, defined below, would have substituted Barr's lower-priced generic Ovcon for all or a portion of their purchases of branded Ovcon, and/or would have paid substantially less for branded Ovcon because Warner Chilcott would have provided discounts in response to competition.

61.    As a consequence of Defendants' Agreement, Plaintiffs and members of the Class have been deprived of the benefits of free and open competition in their purchases. Purchasers of Ovcon were required to continue purchasing brand name Ovcon when a less expensive

- 13 -

product would have otherwise been available.

## CLASS ACTION

62.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the

Federal Rules of Civil Procedure, on behalf of themselves and the following Class (the "Class"):

> All persons and entities in the United States who purchased Ovcon directly from any of the Warner Chilcott Defendants or their subsidiaries at any time from April 22, 2004, through the present and continuing until the effects of Defendants' anticompetitive conduct have ceased ("Class Period"). Excluded from the class are Defendants and their officers, directors, employees, subsidiaries or affiliates, and all government entities.

63.     The Class is so numerous that joinder of all members is impracticable. Class

members include wholesalers, hospitals, health maintenance organizations, and/or retail chain

drug stores. Upon information and belief, the Class includes one hundred or more members, and

the exact identity of Class members is ascertainable from the records of Defendants.

64.     There are questions of law and fact common to the Class, including but not

limited to, the following:

> a.     whether Defendants combined, agreed or conspired as alleged herein in
>
>         restraint of trade;
>
> b.     whether Defendants' agreement, combination, or conspiracy was lawful;
>
> c.     whether Defendants' unlawful conduct as alleged herein has affected
>
>         interstate commerce;
>
> d.     whether Defendants' unlawful conduct caused Plaintiffs and the other
>
>         members of the Class to pay more for Ovcon than they would have paid
>
>         absent Defendants' conduct;
>
> e.     whether Defendants' unlawful conduct caused antitrust injury to the

business or property of Plaintiffs and the member of the Class and, if so, the appropriate relief and/or measure of damages.

65.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting individual members because Defendants have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in Defendants' collusive conduct.

66.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class members suffered antitrust injury by the same wrongful conduct by the Defendants; they have all paid artificially inflated prices for Ovcon resulting from Warner Chilcott's agreement with Barr to exclude generic competition.

67.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel experienced in class action and antitrust litigation. Plaintiffs have no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class.

68.    A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require. The benefits of proceeding by way of class action, including providing injured persons or entities with a method for obtaining redress on claims that they might not be able to pursue individually, substantially outweigh any difficulties that may arise in the management of a class action.

69.    Plaintiffs know of no difficulty that would be encountered in the management of

the claims advanced by the Class that would preclude certification.

## INTERSTATE TRADE AND COMMERCE

70.    During the period relevant to this litigation, Ovcon was sold throughout the United States. Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state lines. Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

71.    In furtherance of their unlawful conduct, Defendants employed the United States mail and interstate and international telephone lines, as well as means of interstate and international travel.

## VIOLATION

### COUNT I: SHERMAN ACT § 1

72.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully stated herein.

73.    By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon out of the market, the Defendants have engaged in a continuing contract, combination or conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

74.    The Defendants' contract, combination and/or conspiracy has included concerted actions and undertakings among Defendants with the purpose and effect of fixing, raising, maintaining or stabilizing the price of Ovcon.

75.    For the purpose of formulating and effectuating their contract, combination and/or conspiracy, Defendants performed the following acts:

   a.    entering into an illegal agreement by which Barr agreed not to sell generic

Ovcon in U.S. commerce in exchange for monetary payment by Warner

Chilcott; and

b.    depriving direct purchasers of the ability to purchase Ovcon at a

competitive price.

76.    The acts done by each of the Defendants as part of, and in furtherance of, their

contract, combination and/or conspiracy were authorized, ordered or done by their officers,

agents, employees or representatives while actively engaged in the management of Defendants'

affairs.

77.    Defendants' illegal contract, combination and/or conspiracy to prevent the

introduction into the U.S. marketplace of a generic version of Ovcon resulted in Plaintiffs and

members of the Class paying more than they would have paid for Ovcon absent Defendants'

illegal conduct.

78.    Defendants' contract, combination and/or conspiracy is a *per se* violation of

Section 1 of the Sherman Act, 15 U.S.C. § 1.

79.    In the alternative, Defendants' contract, combination and/or conspiracy violates

Section 1 of the Sherman Act, 15 U.S.C. § 1, under the "quick look" and/or rule of reason

analyses, because the purpose and effect of Defendants' conduct was to unreasonably restrain

competition in the sale of Ovcon and its generic equivalents.  To the extent required by law, the

relevant product market is Ovcon and its AB-rated generic equivalents and the relevant

geographic market is the United States.

## EFFECTS

80.    Defendants have undertaken the foregoing unlawful courses of conduct for the

following purposes and with the following effects:

a.      prices for Ovcon have been fixed, raised, maintained, or stabilized at

artificially high and non-competitive levels;

b.      buyers of Ovcon have been unable to purchase lower-priced generic

versions of Ovcon;

c.      buyers of Ovcon have been deprived of the benefits of free and open

competition in their purchases; and

d.      competition in the production and sale of Ovcon has been restrained,

suppressed, and eliminated.

## DAMAGES

81.     During the relevant period, Plaintiffs and members of the Class purchased

substantial amounts of Ovcon from Defendants.  As a result of Defendants' illegal conduct,

Plaintiffs and members of the Class were compelled to pay, and did pay, artificially inflated

prices for Ovcon.  Those prices were substantially greater than the prices they would have paid

absent the illegal agreement, combination or conspiracy alleged herein, because they were

deprived of the opportunity to: (1) pay lower prices for the generic versions of the drug; (2) pay

lower prices for their Ovcon requirements by switching more of the volume of their purchases

from the brand to the generic versions; and (3) pay lower prices for the brand-name drug Ovcon.

Members of the Class have sustained substantial losses and damage to their businesses and

property in the form of overcharges, among other things.  The full amount and forms and

components of such damages will be calculated after discovery and upon proof at trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and members of the Class, respectfully request:

1.    Certification of this case as a class action;

2.    Judgment declaring Defendants' contract, combination, or conspiracy alleged herein to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act;

3.    An injunction against Defendants from continuing their illegal contract, combination, or conspiracy;

4.    Judgment in Plaintiffs' favor and against Defendants for damages representing three times the overcharge damages sustained by Plaintiffs and the other members of the Class defined herein;

5.    Joint and several judgment be entered against each Defendant in favor of Plaintiffs and the other members of the Class;

6.    An award to Plaintiffs of all costs incurred, including reasonable attorneys' fees;

7.    Pre- and post-judgment interest;

8.    Such other and further relief as the Court deems just and proper.

Dated: January 2 7, 2006

By: *Michael D Hausfeld /r*

Michael D. Hausfeld (D.C. Bar No. 153742)
COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Linda P. Nussbaum (D.C. Bar No. 483254)
Kanchana Wangkeo
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
150 East 52nd Street, 30th Floor
New York, NY 10022
Tel: (212) 838-7797
Fax: (212) 838-7745

***Counsel for Plaintiffs Meijer, Inc. and Meijer Distribution, Inc.***

*Richard B. Drubel /rme*
Richard B. Drubel (D.C. Bar No. 334359)
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, NH 03755
Tel: (603) 643-9090
Fax: (603) 643-9010

William Isaacson (D.C. Bar No. 414788)
Tanya Chutkan (D.C. Bar No. 420478)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave., NW, Ste. 800
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131

***Counsel for Plaintiff Valley Wholesale Drug Co., Inc.***

Bruce E. Gerstein
Barry S. Taus
Kevin S. Landau
GARWIN GERSTEIN & FISHER, LLP
1501 Broadway, Ste. 1416
New York, NY 10011
Tel: (212) 398-0055
Fax: (212) 764-6620

David U. Fierst (D.C. Bar No. 912899)
STEIN, MITCHELL & MEZINES LLP
1100 Connecticut Ave., NW
Suite 1100
Washington, DC 20036
Tel: (202) 737-7777
Fax: (202) 296-8312

*Counsel for Plaintiff Louisiana Wholesale Drug Co., Inc.*

Daniel Berger
David Sorenson
Eric L. Cramer
Peter Kohn
Daniel Simons
BERGER & MONTAGUE, P.C.
1622 Locust St.
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

David U. Fierst (D.C. Bar No. 912899)
STEIN, MITCHELL & MEZINES LLP
1100 Connecticut Ave., NW
Suite 1100
Washington, DC 20036
Tel: (202) 737-7777
Fax: (202) 296-8312

*Counsel for Plaintiff Rochester Drug Co-operative, Inc.*

Dianne M. Nast
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601
Tel: (717) 892-3000
Fax: (717) 892-1200

Michael D. Hausfeld (D.C. Bar No. 153742)
COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Counsel for Plaintiffs SAJ Distributors, Inc. and Stephen L. LaFrance Holdings, Inc.*

Thomas M. Sobol
Hagens Berman Sobol & Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Tel: (617) 482-3700

Jonathan W. Cuneo (D.C. Bar No. 939389)
David W. Stanley (D.C. Bar No. 174318)
William H. Anderson
CUNEO GILBERT & LaDUCA, LLP
507 C Street, NE
Washington, DC 20002
Tel: (202) 789-3960

*Counsel for Plaintiff American Sales Company, Inc.*

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Valley Wholesale Drug Company Inc.'s Joint Stipulation was served this 1st day of February 2006, by first-class mail, on the parties listed below:

Kevin Arquit, Esq.
Annette C. Rizzi, Esq.
Charles Koob, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954

**Counsel for Defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., Galen (Chemicals) Ltd.**

Karen N. Walker, Esq.
Mark L. Kovner, Esq.
Chong S. Park, Esq.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005

**Counsel for Defendant Barr Pharmaceuticals, Inc.**

By: _Kimberly H. Schultz_ /AMF
Kimberly H. Schultz, Esq.
Boies, Schiller & Flexner LLP
26 South Main Street
Hanover, NH 03755