IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VALLEY WHOLESALE DRUG COMPANY, INC., on behalf of itself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:05CV02321 (CKK) |
| v. | ) ) | |
| WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., GALEN (CHEMICALS), LTD. AND BARR PHARMACEUTICALS, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**BARR PHARMACEUTICALS' ANSWER
TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant BARR PHARMACEUTICALS, INC. ("Barr") hereby responds to the allegations of plaintiff VALLEY WHOLESALE DRUG COMPANY, INC. ("Plaintiff") in its purported Class Action Complaint ("Complaint"), by denying it has engaged or is engaging in any unlawful or unfair methods of competition in or affecting commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Barr further responds to each paragraph of the Complaint as set forth below. Any allegation in the Complaint not specifically addressed below is hereby denied.

1.    This antitrust class action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief, treble damages and costs of suits for the injuries sustained by Plaintiff and similarly situated class members as a result of Defendants' violations of Section 1 of the Sherman Act, as alleged herein. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15.

**ANSWER:**    Paragraph 1 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 1 of the Complaint, and specifically denies that Plaintiff is entitled to any relief whatsoever.

2.    Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391 (b) and (c).  Defendants named herein transact business and/or are found within this district, and the interstate trade and commerce, hereinafter described, is carried out, in substantial part, in this district.

**ANSWER:**    Paragraph 2 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 2 of the Complaint.

3.    This case involves a horizontal agreement not to compete entered into between Warner Chilcott and Barr (as defined below and collectively referred to as "Defendants"), who are in the business of manufacturing and selling pharmaceutical drugs.  As alleged more fully herein, Barr developed a generic drug which is bioequivalent to Warner Chilcott's Ovcon 35 (a prescription oral contraceptive) and was approved by the United States Food and Drug Administration ("FDA") for sale on or about April 22, 2004. However, in exchange for, *inter alia*, approximately $20 million, Barr entered into an agreement with Warner Chilcott not to enter the United States market with its generic Ovcon 35 product for a period of five years (the "'Agreement").

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 3 of the Complaint, except admits that it is in the business of manufacturing and selling pharmaceutical drugs and admits that on April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon 35.

4.    The effects of the Agreement between Warner Chilcott and Barr were to prevent generic competition to Ovcon 35, thereby depriving U.S. purchasers of the benefit of a lower-cost alternative to Warner Chilcott's higher-priced Ovcon 35 birth control product.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 4 of the Complaint.

5.      As a result of the Defendants' illegal Agreement, Warner Chilcott was able to preserve its United States market for Ovcon 35 and sell Ovcon 35 at artificially inflated prices.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 5 of the Complaint.

6.      Plaintiff and members of the class are direct purchasers of Ovcon 35 and bring this action seeking a judgment that Defendants' Agreement is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiff seeks to enjoin this unlawful conduct and recover damages for the injuries sustained by it and members of the Class resulting from Defendants' unlawful Agreement.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 6 of the Complaint, but denies Plaintiff suffered any injury whatsoever.

7.      Plaintiff Valley Wholesale Drug Company, Inc. is a corporation organized under the laws of the State of California and is located at 1401 W. Fremont Street, Stockton, California, 95203-2627.  Plaintiff purchased the prescription drug Ovcon 35 directly from Warner Chilcott during the Class period, as defined below.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 7 of the Complaint.

8.      Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.  Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products in the United States.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 8 of the Complaint.

9.      Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129.

3

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 9 of the Complaint.

10.    Defendant Warner Chilcott (U.S.) Inc. is a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (U.S.) Inc. is organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 10 of the Complaint.

11.    Galen (Chemicals) Ltd., is organized, existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen Chemicals is directly or indirectly owned or controlled by Warner Chilcott Holdings Company III, Ltd. Galen Chemicals entered into the anticompetitive agreement with Barr Pharmaceuticals, Inc. that is the subject of this lawsuit

**ANSWER:**    Barr admits that it executed an Option and License Agreement with Galen (Chemicals) Ltd.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 11 of the Complaint.

12.    Defendants Warner Chilcott Holdings Company III Ltd., Warner Chilcott Corporation, Warner Chilcott (US), Inc. and Galen (Chemicals) Ltd. are referred to herein as "Warner Chilcott." Warner Chilcott is a specialty pharmaceutical company focusing on the development, sales and marketing of women's healthcare and dermatology prescription products.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 12 of the Complaint.

13.    Defendant Barr Pharmaceuticals, Inc. ("Barr") is a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware with a principal place of business at 2 Quaker Road, P.O. Box 2900, Pomona, New York, 10970-0519.  Barr is engaged in the business of, among other things, developing, manufacturing, marketing and distributing generic oral contraceptive products.

**ANSWER:**    Barr admits that it is a corporation organized under the laws of the State of Delaware.  Barr further admits that it is a pharmaceutical company whose regular business activities include the development, manufacture, and marketing of various pharmaceutical products.  Barr denies the remaining allegations contained in Paragraph 13 of the Complaint.

4

14.     Plaintiff brings this action on behalf of itself and, under Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, as a representative of a Class defined as follows:

> All persons who have purchased Ovcon 35 directly from Warner Chilcott at any time during the period April 22, 2004 through and after the date hereof until the effects of Defendants' illegal contract, combination or conspiracy cease (the "Class").

Excluded from the Class are Defendants and their officers, directors, management and employees, subsidiaries or affiliates and all entities of the federal government.

**ANSWER:**    Paragraph 14 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 14 of the Complaint, but specifically denies that this suit can be maintained as a class action.

15.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at the present time, it is believed to be in the hundreds. Furthermore, the Class is readily identifiable from information and records maintained by Defendants.

**ANSWER:**    Paragraph 15 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 15 of the Complaint, but specifically denies that this suit can be maintained as a class action.

16.     Plaintiff's claims are typical of the members of the Class. Plaintiff and all Class members were damaged by the same wrongful conduct by the Defendants: they have all paid artificially inflated prices for Ovcon 35 resulting from Warner Chilcott's agreement with Barr to exclude generic competition.

**ANSWER:**    Paragraph 16 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr denies that Plaintiff and/or purported class members were damaged as a result of its conduct and denies that this suit can be maintained as a class action. Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16 of the Complaint.

17.    Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Plaintiff are coincident with, and not antagonistic to, those of the Class.

**ANSWER:**    Paragraph 17 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17 of the Complaint, but specifically denies that this suit can be maintained as a class action.

18.    Plaintiff is represented by counsel who are experienced and competent in the prosecution of class actions and antitrust litigation.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 18 of the Complaint, but specifically denies that this suit can be maintained as a class action.

19.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class.  Such generally applicable conduct is inherent in Defendants' collusive conduct.

**ANSWER:**    Paragraph 19 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 19 of the Complaint, but specifically denies that this suit can be maintained as a class action.

20.    Questions of law and/or fact common to the Class include, but are not limited to, the following:

(a)    whether Defendants combined, agreed or conspired as alleged herein in restraint of trade;

(b)    whether Defendants' contract, combination or conspiracy is a *per se* violation of Section 1 of the Sherman Act,

(c)    whether the activities of Defendants as alleged herein have substantially affected interstate commerce; and

(d)    whether, and to what extent, the conduct of Defendants caused injury to the business or property of Plaintiff and the members of the Class, and if so, the appropriate relief and/or measure of damages.

**ANSWER:**    Paragraph 20 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 20 of the Complaint, but specifically denies that plaintiff is entitled to any relief whatsoever and denies that this suit can be maintained as a class action.

21.    Class action treatment is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would require.  The benefits of proceeding by way of a class action, including providing injured persons or entities with a method for obtaining redress on claims that it might not be able to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

**ANSWER:**    Paragraph 21 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 21 of the Complaint, but specifically denies that this suit can be maintained as a class action.

22.    Plaintiff knows of no difficulty which will be encountered in the management of this action that will preclude its maintenance as a class action.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 22 of the Complaint, but specifically denies that this suit can be maintained as a class action.

23.    Under the Federal Food, Drug, & Cosmetics Act (21 U.S.C. §§ 301-392), a company seeking to sell a new drug must first obtain approval from FDA. This is accomplished by filing a New Drug Application ("NDA"), which must contain (among other things) data establishing the drug's safety and effectiveness. Once approved, a new drug is generally referred to as a "brand-name drug" because it is marketed under a trade name or trademark for the product rather than, for example, by the chemical name of the active ingredient in the product.

**ANSWER:**    Paragraph 23 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that, among other things, a drug manufacturer must obtain approval from the FDA before a manufacturer may lawfully introduce a new drug in the United States.  Barr further admits that, among other things, a drug manufacturer must file a New Drug Application with the FDA and demonstrate that a new drug is safe and effective for its intended use.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the Complaint.

24.    In 1984, Congress enacted the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (the "Hatch-Waxman Amendments"), amending the Federal Food, Drug, & Cosmetics Act, 21 U.S.C. §§ 301-392.

**ANSWER:**    Paragraph 24 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act") amended certain provisions of the Federal Food, Drug, & Cosmetics Act, 21 U.S.C. §§ 301-392.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 of the Complaint.

25.    The Hatch-Waxman Amendments sought to get generic drugs to market faster. Companies seeking to produce and market a generic form of a brand-name drug were relieved of the obligation of filing a full NDA.  Instead, generic manufacturers could file an Abbreviated New Drug Application ("ANDA") relying on the findings of safety and effectiveness supporting the NDA for the brand-name drug.  FDA-approved generic drugs are certified by FDA as bioequivalent to the brand-name drugs with which they compete and are completely interchangeable with the brand-name drug.  FDA refers to such drugs as "AB-rated" drugs.

**ANSWER:**    Barr admits that the Hatch-Waxman Act established certain procedures relating to generic pharmaceuticals.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25 of the Complaint.

26.     Upon their introduction, generic drugs are generally priced 30 to 50 percent (or more) below the price of their brand-name equivalents.  Because generic and branded drugs are fully interchangeable in terms of efficacy and safety, purchasers of brand-name drugs for which generic versions are available engage in extensive substitution of the generic for the brand-name drug. As a result, a brand-name drug facing generic competition typically loses a significant share of its market to generics.  The brand-name manufacturer may also give discounts to customers in response to generic competition.  Price competition from generic drugs benefits all direct purchasers, who are able to buy fully interchangeable drugs at significantly lower prices.

**ANSWER:**     Barr admits that generic drugs can cost less than bioequivalent branded drugs, but that each drug must be considered individually to observe pricing behavior.  Barr further admits that in many instances generic drugs may substituted for brand-name drugs, but that each drug must be considered individually to observe sales trends.   Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26 of the Complaint.

27.     Ovcon 35 has been available to the general public as a brand-name prescription oral contraceptive product since approximately 1976.  There are no known patents that continue to protect this product.

**ANSWER:**     Barr admits that it is unaware of any claims of patent protection on Ovcon 35.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27 of the Complaint.

28.     Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS") manufactured, distributed and marketed Ovcon 35 in the United States.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 28 of the Complaint.

29.     On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title, and interest in Ovcon 35 products, including an agreement with Bristol-Myers Squibb Laboratories Company ("BMSLC"), a wholly owned subsidiary of BMS, to supply Warner Chilcott with Ovcon 35.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 29 of the Complaint.

30.     Warner Chilcott then began marketing Ovcon 35 manufactured by BMSLC, and continues to be the exclusive marketer of Ovcon 35.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 30 of the Complaint.

31.     Ovcon 35 is highly profitable for Warner Chilcott. Warner Chilcott sells Ovcon 35 at a price substantially above Warner Chilcott's cost of acquiring the product.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 31 of the Complaint.

32.     For the twelve months ending in September 30, 2004, Warner Chilcott's net sales of Ovcon 35 were approximately $71.5 million.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 32 of the Complaint.

33.     In September 2001, Barr filed its ANDA with the FDA requesting approval to market a generic, AB-rated version of Ovcon 35 in the United States.

**ANSWER:**    Barr admits that it filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon 35.  Barr denies the remaining allegations contained in Paragraph 33 of the Complaint.

34.  In January 2003, Barr publicly communicated its intent to launch a generic version of Ovcon 35 by the end of 2003.

**ANSWER:**    Barr denies the allegations contained in Paragraph 34, except admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

35.     Barr intended to offer for sale its generic version of Ovcon at a price approximately 30% less than the price charged by Warner Chilcott.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 35 of the Complaint.

36.    Both Barr and Warner Chilcott projected that Barr's generic Ovcon 35 product would capture approximately 50% of Warner Chilcott's sales of Ovcon 35 in the first year.

**ANSWER:**    Barr admits that it made projections regarding the sales of a generic Ovcon 35 product.  Barr denies the remaining allegations of Paragraph 36 with respect to Barr itself.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations with respect to Warner Chilcott.

37.    Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon 35 would decline by at least $100 million over a three-year period.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 37 of the Complaint.

38.    In order to combat this threat, Warner Chilcott embarked on a strategy to replace Ovcon 35 with a chewable form of Ovcon 35 before generic entry by Barr.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 38 of the Complaint.

39.    Warner Chilcott planned to engage in certain practices that could ultimately result in the replacement of prescriptions for (and supply of) non-chewable Ovcon 35 with chewable Ovcon 35.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.

40.    Prescriptions written for Ovcon 35 chewable would not be able to be filled at pharmacies with Barr's generic Ovcon 35 product because Barr's generic version of the non-chewable Ovcon 35 product would not be AB-rated to the Ovcon 35 chewable form.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 40 of the Complaint.

41.    The change to a chewable form would bring no real benefits to patients and was sought by Warner Chilcott to preserve its monopoly profits on Ovcon 35.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 41 of the Complaint.

42.     By mid-2003, Warner Chilcott's strategy of switching users from non-chewable Ovcon 35 to Ovcon 35 chewable was in jeopardy because Barr's generic entry appeared imminent and Ovcon 35 chewable had not yet been approved by the FDA.

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 42 of the Complaint.

43.     In August 2003, Warner Chilcott responded to Barr's imminent introduction of a generic version of Ovcon 35 by discussing with Barr potential business arrangements under which Barr would refrain from competing with its generic Ovcon 35 product.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 43 of the Complaint, except admits that in August 2003 representatives of Barr and Warner Chilcott discussed a number of possible business transactions.

44.     On September 10, 2003, Warner Chilcott and Barr signed a letter of intent to enter into an agreement in which Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon 35 product after Barr received final FDA approval.  Instead, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 44 of the Complaint, except admits that on September 10, 2003, Barr and Warner Chilcott executed a letter of intent to enter into an agreement that would give Warner Chilcott an option to enter into a five-year exclusive license to Barr's Ovcon ANDA and a related supply agreement.

45.     On March 24, 2004, the Defendants signed their Agreement and Warner Chilcott paid Barr $1 million.

**ANSWER:**     Barr admits that on March 24, 2004, Barr and Warner Chilcott executed an option agreement implementing the terms of the parties' letter of intent, and that Barr was paid $1 million in consideration for the option by Warner Chilcott.  Barr denies the remaining allegations contained in Paragraph 45 of the Complaint.

46.    Under the Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself, or through a license, for five years.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 46 of the Complaint, except admits that Warner Chilcott exercised its option to a five-year exclusive license to Barr's Ovcon ANDA in May 2004.

47.    On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic Ovcon 35.

**ANSWER:**    Barr admits that on April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon 35.

48.    On April 23, 2004 Barr announced its intent to begin marketing its generic version of Ovcon 35 under the name "Balziva" in the event that Warner Chilcott chose not to exercise its option under the Agreement.

**ANSWER:**    Barr admits that in April 2004 it publicly contemplated launching a generic version of Ovcon 35, under the trade name "Balziva," if Warner Chilcott chose not to exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

49.    On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Pursuant to the terms of the Agreement, Warner Chilcott paid Barr $19 million in exchange for Barr's agreement not to compete with Warner Chilcott by introducing into the market its generic version of Ovcon 35.

**ANSWER:**    Barr admits that on or about May 6, 2004, Warner Chilcott exercised the option for an exclusive license and supply, and further admits that Warner Chilcott paid Barr $19 million under the final agreement.  Barr denies the remaining allegations contained in Paragraph 49 of the Complaint.

50.    As a result, no generic version of Ovcon 35 was ever launched, and Barr has agreed not to launch a generic version of Ovcon 35 until at least May 2009.

**ANSWER:**    Barr denies the allegations contained in Paragraph 50 of the Complaint, except admits that until approximately May 2009 Barr is obligated to supply Warner Chilcott exclusively with product produced under Barr's ANDA on generic Ovcon.

51.    In the absence of the Agreement, Barr would have begun marketing its generic Ovcon 35 product after receiving FDA approval of its ANDA.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 51 of the Complaint.

52.    As a consequence of the Agreement, purchasers of Ovcon 35 were required to continue purchasing brand-name Ovcon 35 product when less expensive generic product would have otherwise been available.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 52 of the Complaint.

53.    If Barr had introduced its generic product, prices for Ovcon 35 would have declined rapidly.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 53 of the Complaint.

54.    Barr has abided by its agreement not to sell generic Ovcon 35 in the United States, and no company, other than Barr, has received FDA approval for a generic version of Ovcon 35.

**ANSWER:**    Barr admits that it has not sold generic Ovcon 35 in the United States. Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 54 of the Complaint.

55.    At all material times, Ovcon 35 was shipped across state lines and sold to customers located outside the state of manufacture.

**ANSWER:**    Paragraph 55 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 55 of the Complaint.

56.    During the relevant time period, in connection with the purchase and sale of Ovcon 35, monies as well as contracts, bills and other forms of business communications and transactions were transmitted in a continuous and uninterrupted flow across state lines.

**ANSWER:**    Paragraph 56 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 56 of the Complaint.

57.    During the relevant time period, various devices were used to effectuate the conspiracy alleged herein, including the United States mail, interstate and foreign travel, and interstate and foreign telephone commerce.

**ANSWER:**    Paragraph 57 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 57 of the Complaint.

58.    The activities of Defendants as charged in this complaint were within the flow of, and have substantially affected, interstate commerce.

**ANSWER:**    Paragraph 58 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 58 of the Complaint.

59.    Plaintiff hereby incorporates by reference the allegations set forth in paragraphs numbered 1 through 58 inclusive.

**ANSWER:**    Barr incorporates and realleges by this reference each and all of the matters set forth in its Answers to all preceding paragraphs as if fully set out herein.

60.    By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon 35 out of the market, the Defendants have engaged in a continuing contract, combination and/or conspiracy, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:**    Paragraph 60 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 60 of the Complaint.

61.    The Defendants' contract, combination and/or conspiracy has included concerted action and undertakings between Defendants with the purpose and effect to fix, raise, maintain or stabilize the price of Ovcon 35.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 61 of the Complaint.

62.    For the purpose of formulating and effectuating their contract, combination and/or conspiracy, Defendants performed the following acts, as alleged herein, including the following:

(a)    entering into an illegal agreement by which Barr agreed not to sell generic Ovcon 35 in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

(b)    depriving direct purchasers of the ability to purchase Ovcon 35 at a competitive price.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 62 of the Complaint.

63.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination and/or conspiracy were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of Defendants' affairs.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 63 of the Complaint.

64.    Defendants' illegal contract, combination and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon 35 resulted in Plaintiff and the Class paying more than they would for Ovcon 35 absent Defendants' illegal conduct.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 64 of the Complaint.

65.    Defendants' contract, combination and/or conspiracy is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:**    Paragraph 65 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 65 of the Complaint.

66.    In the alternative, Defendants' contract, combination and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under "Quick Look" and/or Rule of Reason analyses, since the purpose and effect of Defendants' acts were to unreasonably restrain competition in the sale of Ovcon 35 and generic versions of Ovcon 35. To the extent required by law the relevant product market is Ovcon 35 and its AB-rated generic equivalents and the relevant geographic market is the United States.

**ANSWER:**    Paragraph 66 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 66 of the Complaint.

67.    Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

(a)    Prices for Ovcon 35 have been fixed, raised, maintained or stabilized at artificially high and non-competitive levels;

(b)    Buyers of Ovcon 35 were unable to purchase lower-priced generic versions of Ovcon 35;

(c)    Buyers of Ovcon 35 have been deprived of the benefits of free and open competition in their purchases; and

(d)    Competition in the production and sale of Ovcon 35 has been restrained, suppressed and eliminated.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 67 of the Complaint.

68.    During the relevant period, members of the Class purchased substantial amounts of Ovcon 35 from Warner Chilcott. As a result of the illegal conduct of Defendants, members of the Class were compelled to pay, and did pay, artificially inflated prices for Ovcon 35. Those prices were substantially greater than the prices that members of the Class would have paid absent the illegal agreement, combination and/or conspiracy alleged herein. Members of the Class have as a consequence sustained substantial losses and damage to their businesses and property in the form, among others, of overcharges.  The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 68 of the Complaint.

## DEFENSES

In addition to the foregoing responses, Barr asserts the following defenses to the claims alleged in the Plaintiff's Class Action Complaint.  Barr does not assume the burden of proof on these defenses where the applicable substantive law provides otherwise.

### First Affirmative Defense

1.    Plaintiff's Complaint fails to state a claim against Barr upon which relief can be granted.

### Second Affirmative Defense

2.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### Third Affirmative Defense

3.    Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

4.    Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### Fifth Affirmative Defense

5.     Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr has been reasonable, based upon independent, legitimate business and economic justifications, and was taken without the purpose or effect of injuring competition.

### Sixth Affirmative Defense

6.     Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr was reasonable in relation to the development and preservation of its business.

### Seventh Affirmative Defense

7.     Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have injured competition in any relevant market.

### Eighth Affirmative Defense

8.     Plaintiff's claims are barred, in whole or in part, because Barr's actions have pro-competitive effects that benefit competition as a whole in any relevant market.

### Ninth Affirmative Defense

9.     Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have harmed competition and/or consumers.

### Tenth Affirmative Defense

10.     Plaintiff's claims are barred, in whole or in part, because Barr had no knowledge, intention, notice or belief that Barr's actions might illegally restrain trade.  Further, Barr could not have known that its actions might illegally restrain trade.

### Eleventh Affirmative Defense

11.     Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any willful or flagrant act.

### Twelfth Affirmative Defense

12.    Plaintiff's claims are barred, in whole or in part, because Barr relied in good faith on the actions and statements of the Federal Trade Commission.

### Thirteenth Affirmative Defense

13.    Plaintiff's claims are barred, in whole or in part, because Barr did not conceal any of its actions.

### Fourteenth Affirmative Defense

14.    Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any pattern or practice of illegal activity.

### Fifteenth Affirmative Defense

15.    Plaintiff's claims are barred, in whole or in part, because Barr's actions were the result of a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error.

### Sixteenth Affirmative Defense

16.    Plaintiff's claims are barred, in whole or in part, because Barr's actions did not cause harm to the Plaintiff.

### Seventeenth Affirmative Defense

17.    Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any unfair or deceptive act or practice.

### Eighteenth Affirmative Defense

18.    Plaintiff's claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.

## Nineteenth Affirmative Defense

19.    Plaintiff's claims are barred, in whole or in part, because Barr has no market power and plaintiff has failed to allege any market power.

## Twentieth Affirmative Defense

20.    Plaintiff's claims are barred, in whole or in part, because plaintiff does not have standing.

## Twenty-First Affirmative Defense

21.    Plaintiff's claims are barred, in whole or in part, because plaintiff has not suffered antitrust injury.

## Twenty-Second Affirmative Defense

22.    Plaintiff's claims are barred, in whole or in part, because Barr has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to plaintiff.

## Twenty-Third Affirmative Defense

23.    Plaintiff's claims are barred, in whole or in part, because the action against Barr is not properly maintained as a class action.

## Twenty-Fourth Affirmative Defense

24.    To the extent that plaintiff has failed to mitigate, minimize, or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

## Twenty-Fifth Affirmative Defense

25.    Barr reserves the right to assert and rely on other applicable defenses as may become available or apparent, to amend its answer and/or defenses, and/or delete defenses that it determines to be inapplicable.

**JURY DEMAND**

Barr hereby demands trial by jury on all claims so triable.

**PRAYER FOR RELIEF**

Wherefore, Barr prays as follows:

1.      That the Court enter judgment for Barr;

2.      That the Court award Barr reasonable costs and expenses including but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

Date:   February 21, 2006                    Respectfully submitted,

                                           /s/ Karen N. Walker
                                          Karen N. Walker (D.C. Bar # 412137)
                                          Mark L. Kovner (D.C. Bar # 430431)
                                          Chong S. Park (D.C. Bar # 463050)

                                          KIRKLAND & ELLIS LLP
                                          655 Fifteenth Street, N.W., Suite 1200
                                          Washington, D.C.  20005
                                          Tel. (202) 879-5000
                                          Fax (202) 879-5200

                                          *Attorneys for Defendant Barr*
                                          *Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on February 21, 2006, the undersigned attorney caused a true and correct copy of the foregoing DEFENDANT BARR PHARMACEUTICALS' ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT in Civil Action No. 1:05-CV-02321-CKK to be served on the following counsel of record by First Class Mail.

_/s/  Karen N. Walker_____
Karen N. Walker

Richard B. Drubel
Kimberly H. Schultz
BOIES, SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, NH 03755

William Isaacson
Tanya Chutkan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015

Angela K. Drake
Nicole D. Lindsey
LOWTHER JOHNSON LLC
901 St. Louis Street, 20th Floor
Springfield, MO 65806

Michael Heim
Russ Chorush
CONLEY ROSE
Chase Tower
600 Travis Street, Suite 1800
Houston, TX 77002-2910